**CITY OF DEARBORN, Plaintiff,**

v.

**DLZ CORPORATION, a Delaware Corporation, JDJ & A, Inc., an Ohio Corporation, Dodson–Stilson, an Ohio Corporation, Pratap Rajadhyaksha, an individual and Thomas Sisley, an individual, Defendants.**

No. CIV.00–71329.

United States District Court,
E.D. Michigan,
Southern Division.

Sept. 1, 2000.

Richard S. Baron, Michael J. Watza, John M. Sier, Sharon A. DeWaele, Kitch Drutchas Wagner DeNardis & Valitutti, Detroit, MI, for Plaintiff.

John W. Tanner, III, Debra A. Walling, Dearborn, for Plaintiff Co–Counsel.

Diane W. French, Barry L. Lubow, Columbus, OH, for Defendants' Counsel.

## Opinion and Order

FEIKENS, District Judge.

## I. Introduction

In its amended complaint, the City of Dearborn ("Dearborn") alleges various fraud and misrepresentation counts, a conspiracy count, a negligence count, a breach of contract count, and an indemnification count against defendants. All its allegations focus on a contract that Dearborn entered into with Snell, Inc. ("Snell"), which is not named as a defendant. Dearborn names three corporate defendants, DLZ Corp. ("DLZ"), Dodson–Stilson, Inc. ("Dodson–Stilson"), and JDJ & A, Inc. ("JDJ & A"), and two individual defen-dants, Pratap Rajadhyaksha, Chief Operating Officer of Snell and vice-president and majority shareholder of DLZ, and Thomas Sisley, an employee of JDJ & A. The defendants move to dismiss the complaint. Additionally, Snell moves to intervene.

## II. Factual Background

In order to treat its stormwater and wastewater in compliance with state and federal law, in October 1992, Dearborn solicited proposals for the construction of retention basins. During excessive flows, stormwater and wastewater would be captured in such basins and then bled back into the transportation systems for ade-

quate treatment. In response, Snell proposed a retention treatment tunnel in lieu of the retention basins. Dearborn accepted this proposal and Snell and Dearborn executed a contract (the "Snell contract") on May 20, 1993. Under the contract, Snell was to design and provide engineering services for the construction of the tunnel.

The tunnel project was not workable. Dearborn terminated Snell's contract in 1994 and, in 1996, it terminated the tunnel project.

In 1998, Koenig Fuel and Supply Co., a contractor on the tunnel project sued Dearborn for damages in state court. (They eventually settled.) Dearborn then filed a third-party complaint in that case against Snell. It sued Snell for damages resulting from negligence, breach of contract, and for indemnification. On Snell's first motion for summary disposition, the state court judge held that the claims for negligence and breach of contract were malpractice claims and were time-barred under Michigan's two-year statute of limitations for malpractice claims. The state court judge also granted Snell's second motion for summary disposition on the indemnification claim holding that, because of its revisions of the tunnel project, Dearborn had materially altered Snell's risk.

In that case, Dearborn had also filed a motion to amend its complaint to add as defendants, DLZ Corp., Dodson–Stilson, Inc.—both defendants in this federal case—Cole Associates, Inc. and DLZ Laboratories. The state court judge denied that motion. The state court case is now on appeal.

On March 15, 2000, Dearborn filed the original complaint and an amended complaint on April 25, 2000 in the case before me.

## III. The Defendants as Alter Egos to Snell

Because I consider evidence submitted by the parties, I treat this motion to dis-

miss as a motion for summary judgment under Rule 56. *See* Fed.R.Civ.P. 12(c).

Dearborn's complaint contains a telling, repeated peculiarity: it describes all of the defendants' actions as having occurred "by and through Snell." It does so because *it had no contract with any of the defendants, only a contract with Snell.* To get around the fact that it had no contract with any of the defendants, Dearborn alleges that those defendants in reality performed the contract for Snell. DLZ is the parent corporation and Snell its subsidiary. Dearborn alleges that the "defendants concealed the fact that DLZ and other DLZ subsidiaries would be involved in the project." Amended Complaint ¶ 72. It alleges that the defendants, through Snell, misrepresented their own finances, experience, and personnel as Snell's finances, experience, and personnel. *See* Count I of Amended Complaint, ¶ 97, 102, 103, 113; Count II, ¶¶ 116, 121, 122, 123, 130; Count IV, ¶¶ 140, 146, 149; Count VII, 172, 178. Dearborn's descriptions of the defendants' actions indicates that the complaint relies on an argument that the defendants were the alter ego of Snell. In effect, to get around the lack of a contract with the defendants and to make the defendants responsible for Snell's obligations under the contract, Dearborn seeks to pierce Snell's corporate veil.

■ Under Michigan law, a " 'corporate veil' may be pierced *only where an otherwise separate corporate existence has been used to subvert justice or cause a result that [is] contrary to some other clearly overriding public policy.*" *Seasword v. Hilti, Inc.,* 449 Mich. 542, 548, 537 N.W.2d 221 (1995) (internal quotations and citations omitted) (emphasis added); *see, also, U.S. v. Cordova Chemical Co. of Michigan,* 113 F.3d 572, 580 (6th Cir.1990), *vacated on other grounds, sub nom Michigan Department of Environmental Quality v. Bestfoods,* 524 U.S. 924, 118 S.Ct. 2317, 141 L.Ed.2d 692 (1998). Thus, the allegation of functional integration of Snell and the defendants, through common ownership and personnel, would not alone be sufficient to pierce Snell's corporate veil to foist liability onto the defendants unless there is an additional allegation that this integration was intended to "subvert justice" or cause a result "that is contrary to overriding public policy."

Here, Dearborn's alter ego argument rests on its allegations that the defendants unlawfully concealed their involvement in the Snell contract so that Snell would receive the contract and the defendants could avoid liability. Amended Complaint ¶¶ 72, 74, 77–80, 81, 83. But, Dearborn was aware of the defendants' relationship to Snell before it entered into the Snell contract. Dearborn had hired Hinshon Environmental Group ("Hinshon") to evaluate Snell's tunnel proposal. In its report dated February 24, 1993 and revised on March 8, 1993, Hinshon described Snell under the heading, "Capability of Firms":

> SEG [Snell Environmental Group] is... a well-respected engineering design firm with a long history of involvement in wastewater projects in the state.... The firm has recently been acquired by a larger corporate entity (DLZ) which is able to augment SEG's capabilities. Tunnel design expertise to support the proposed Dearborn project is available through DLZ affiliates located in Cleveland, in addition to the staff resources available in SEG's Lansing office. The combined talents should be more than adequate to successfully design and construct the proposed tunnel project.

Dearborn's Amended Complaint, Exh. .T, p. 8–9. This report, contained in Dearborn's complaint, belies Dearborn's allegation that the integration of Snell and the defendants had the unlawful purpose of trying to conceal the defendants' involvement in the Snell contract.

■ Without the allegation required under Michigan law, Dearborn's alter ego argument fails and the complaint must be dismissed.

## IV. Statute of Limitations as to Counts I, II, IV & VII, the Fraud and Misrepresentation Counts

Counts I, II, IV and VII may also be dismissed on alternative grounds, even if there were some vitality to Dearborn's alter ego argument.

Dearborn alleges four counts of fraud and misrepresentation or civil conspiracy based on fraud and misrepresentation: Count I alleging fraud and misrepresentation against the defendants; Count II alleging fraud and misrepresentation against JDJ & A; Count IV, alleging civil conspiracy against the defendants,; and Count VII alleging fraud and misrepresentation against Thomas Sisley. In these counts, Dearborn alleges that the defendants committed fraudulent acts and made misrepresentations, by and through Snell, in the procurement of Snell's tunnel contract, executed on May 20, 1993. Dearborn alleges that, in Snell's Response to Request for Proposal, submitted in November 1992, the defendants, by and through Snell, misrepresented their own finances, experience, and personnel as Snell's finances, experience, and personnel. *See* Count I of Amended Complaint, ¶¶ 97, 102, 103, 113; Count II, ¶¶ 116, 121, 122, 123, 130; Count IV, ¶¶ 140, 146, 149; Count VII, 172, 178. The defendants argue that the six-year statute of limitations, *see* MCLA 600.5813, bars these counts which accrued as of the date of the response, November 1992, or at the latest, at the date of the contract, May 1993.

To avoid the statute of limitations, Dearborn claims that it did not know of defendants' involvement in the tunnel project until November 1999 when it took the deposition of Rajadhyaksha, the Chief Operating Officer of Snell. But, Dearborn knew or should have known that the defendants were involved in the Snell contract as early as March 1993 when Hinshon released the report that contained the description of Snell and its relationship with DLZ and its affiliates.

This evidence, provided by Dearborn, clearly shows that, as early as March 1993, Dearborn knew of Snell's use of affiliates and thereby any possible misrepresentations made by Snell. Because the Hinshon report provided sufficient information for Dearborn to figure out that other parties besides Snell were involved in the tunnel project, the statute of limitations was not extended.

The statute of limitations accrued at the latest in May 1993, the date of the Snell contract, and ran out in May 1999; thus, Counts I, II, IV, and VIII, filed in March 2000, are time-barred.

## V. Statute of Limitations As to Count V, Professional Negligence, and Count VI, Breach of Contract

I find that Count V, alleging professional negligence, and Count VI, alleging breach of contract, may also be dismissed on alternative grounds, assuming some vitality to Dearborn's alter ego argument.

The defendants contend that Counts V and VI are more properly claims of professional malpractice and, thus, time-barred by the two-year statute of limitations for professional malpractice. *See* M.C.L. § 600.5805. I note that on summary disposition, the state court judge in the Snell case granted Snell's motion for summary disposition holding that counts of professional negligence and of breach of contract against Snell were actually claims of professional malpractice and time-barred by the two-year statute of limitations.

When a plaintiff asserts a negligence claim against a professional and the duty element of that claim stems from the professional-client relationship, the tort claim is for malpractice and malpractice only. *See Barnard v. Dilley*, 134 Mich. App. 375, 378–79, 350 N.W.2d 887 (1984). Count V alleges negligence on the part of the defendants in making representations, by and through Snell, of Snell's capabilities, Amended Complaint ¶¶ 154–57, and negligence also in the defendants' involve-

ment, in concert with Snell, in the engineering designs of the tunnel project, Amended Complaint ¶ 160. These allegations derive from Snell's relationship as engineers to their client, Dearborn. Thus, I conclude that Count V asserts a professional malpractice claim.

The defendants also argue that Count VI, labeled as a breach of contract claim, is also a claim of professional negligence because the claim is based on the faulty implementation of the tunnel project.

"[A] malpractice action is predicated upon the failure to exercise the requisite skill, whereas a contract action is based upon the professional's failure to perform 'a special duty'." *Brownell v. Garber,* 199 Mich.App. 519, 524, 503 N.W.2d 81 (1993) (citations omitted). In *Brownell,* the plaintiff filed suit against an attorney for negligence and breach of contract. The court found that the " 'contractual' duties allegedly breached by defendant [were] indistinguishable from the duty to render legal services in accordance with the applicable standard of care," and treated the asserted breach of contract claim as a claim of professional malpractice. *Id.* at 525, 503 N.W.2d 81.

 Count VI alleges that the defendants, in concert with Snell, breached the contract by failing to perform the duties required by the contract, by not obtaining appropriate insurance, and failing to indemnify Dearborn for its losses. Amended Complaint ¶¶ 165, 167–68. Except for the reference to indemnification, Dearborn's allegations in Count VI state that the tunnel project failed and Dearborn was damaged due to Snell's failure to *adequately* perform its contractual duties. *See* Amended Complaint ¶¶ 88, 165, 166. These are allegations that the defendants, by and through Snell, failed to perform their duties as engineers. The only allegation that specifically refers to a contractual duty is Dearborn's allegation that the defendants failed to properly indemnify Dearborn. But, this allegation is more properly considered a claim of indemnifica-

tion, identical to the claim made by Dearborn in Count III. Thus, I construe Count VI as a claim of professional malpractice.

As professional malpractice claims, Counts V and VI both accrued when the defendants "discontinued serving the plaintiff in a professional... capacity." MCLA 600.5838(1). This occurred when Snell, the primary contractor, provided its last services on the tunnel project in August 1994. Thus, the statute of limitations ran on Count V and VI in August 1996.

## VI. Snell's Motion to Intervene

The dismissal of all the counts of Dearborn's complaint renders moot Snell's motion to intervene.

## VII. Conclusion

For the reasons discussed above, defendants' motion to dismiss is GRANTED. Snell's motion to intervene is MOOT.

IT IS SO ORDERED.